UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
EDGAR PELICO, *Individually and on behalf*
*of others similarly situated*,

                           Plaintiff,

                -against-

SD   AUTOMOTIVE   INC.   *d/b/a   SD*
*Automotive* and DAVID KLEIN,

                        Defendants.
--------------------------------------------------------X
**POLLAK**, Chief United States Magistrate Judge:

       **REPORT & RECOMMENDATION**
        21 CV 4215 (ENV) (CLP)

On July 27, 2021, plaintiff Edgar Pelico, individually and on behalf of others similarly

situated, commenced this action against defendants SD Automotive Inc. d/b/a SD Automotive,

and David Klein ("Klein") (collectively, "defendants"), seeking damages for unpaid minimum

wages, unpaid overtime wages, and violations of wage notice and wage statement requirements,

pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and the New York

Labor Law ("NYLL") §§ 190 and 650, et seq.  (Compl.[1] ¶ 9).

Currently pending before this Court is plaintiff's motion for default judgment against

defendants.  For the reasons set forth below, the Court respectfully recommends that plaintiff's

motion be granted, and a default judgment entered against defendants.

## FACTUAL BACKGROUND

Defendant SD Automotive is a domestic corporation organized under New York state

law, with its principal place of business at 42 W. Merrick Rd, Valley Stream, New York 11580.

(Id. ¶ 17).  Defendant David Klein is alleged to be the "owner, manager, principal or agent" of

---

[1] Citations to "Compl." refer to the Complaint, filed on July 27, 2021, ECF No. 1.

SD Automotive and possesses operational control and ownership interests in SD Automotive. (Id. ¶¶ 3, 20).  At all times relevant to this action, defendant Klein was responsible for hiring and firing employees of SD Automotive, establishing employees' schedules, maintaining employee records, and determining wages and compensation.  (Id. ¶ 18).  Defendants jointly employed plaintiff as a mechanic from approximately September 2015 until on or around June 19, 2021. (Id. ¶¶ 4, 14, 23; Pelico Decl.[2] ¶ 3; Ansari Decl.[3] ¶ 18).  Plaintiff resides in Queens County, New York.  (Compl. ¶ 13; Pelico Decl. ¶ 2).

According to the Complaint, plaintiff worked six days per week from Monday through Saturday.  (Compl. ¶ 36).  On weekdays, he worked from approximately 8:00 a.m. to 5:00 p.m., while on Saturdays, he worked from approximately 8:00 a.m. to 2:00 p.m.  (Id.)  He therefore was required to work 51 hours per week.  (Id.)  Plaintiff asserts that, from September 2015 until December 2019, he was paid a "fixed salary" of $420.00 per week for all hours worked, and, from January 2020 until June 19, 2021, he was paid $450.00 per week.  (Id. ¶¶ 38-39).  He alleges that, as a result of defendants' policy of paying a "fixed salary," he was not paid for all the hours that he worked, or, in other words, he was not compensated in accordance with the statutory minimum wage.  (Id. ¶ 47).  Additionally, plaintiff claims that he never received overtime compensation for hours worked over 40 in a week.  (Id. ¶ 45).  Finally, plaintiff alleges that defendants did not maintain proper employment records or provide wage statements or wage notices.  (Id. ¶¶ 43, 48, 54).[4]

---

[2] Citations to "Pelico Decl." refer to the Declaration of Edgar Pelico, dated Apr. 20, 2022, ECF No. 23-6.

[3] Citations to "Ansari Decl." refer to the Declaration of Ramsha Ansari in Support of Plaintiff's Motion for Default Judgment, dated May 9, 2022, ECF No. 23-1.

[4] Plaintiff stated that he brought the action on behalf of a class of individuals who were subject to similar practices and policies by defendants.  (Compl. ¶ 57).  However, plaintiff never sought class certification.  Thus, the Court has only addressed the allegations specific to plaintiff.

Plaintiff asserts causes of action under (1) the FLSA for failure to pay plaintiff the statutory minimum wage and overtime compensation, and (2) the NYLL for failure to pay plaintiff the statutory minimum wage and overtime compensation, violation of the notice and recordkeeping requirements, and violation of the wage statement requirements.  (Id. ¶¶ 59-84).

## PROCEDURAL BACKGROUND

Following the filing of the Complaint on July 27, 2021, the Summons and Complaint were served on SD Automotive by service on the Secretary of State on July 29, 2021, and on David Klein by personal service on August 2, 2021.  (Ansari Decl. ¶¶ 6-7; see ECF Nos. 7, 8). When defendants failed to file an answer or otherwise respond within the required time period, the Clerk of Court entered Certificates of Default against defendants on January 13, 2022.  (See ECF No. 19).  On May 9, 2022, plaintiff filed a motion for default judgment (see ECF No. 23), accompanied by the Pelico Declaration, the Ansari Declaration, plaintiff's damages calculations, and plaintiff's attorney's billing records.  (See Pelico Decl.; Ansari Decl.; Dam. Calc.;[5] Billing Recs.[6]).

On May 10, 2022, the Honorable Eric N. Vitaliano referred plaintiff's default judgment motion to the undersigned for a Report and Recommendation.  Thereafter, on June 29, 2022, upon the Court's request, plaintiff supplemented his filing with a Memorandum of Law.  (See Mem.[7]).  Defendants have failed to file anything in response.  For the reasons set forth below, it is respectfully recommended that a default judgment enter against defendants in the amount of $132,110.58.

---

[5] Citations to "Dam. Calc." refer to plaintiff's damages calculation, filed May 9, 2022, ECF No. 23-7.

[6] Citations to "Billing Recs." refer to the Attorney's Fees and Costs Report, filed May 9, 2022, ECF No. 23-8.

[7] Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Law in support of his motion for default judgment, filed June 29, 2022, ECF No. 27.

**DISCUSSION**

I.      Default and Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  See id.; see also Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(b).  In this case, the Clerk of the Court entered a default against defendants on January 13, 2022.  (See ECF No. 19).

The Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party.  Id.  Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because defendants are in default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp.

160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including (1) whether the grounds for default are clearly established; (2) whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment.  See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992).  Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on defendants.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

### A.  Liability under the FLSA

To establish a claim under the FLSA, plaintiff must prove the following:  (1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) plaintiff is an "employee" within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA.  Edwards v. Community Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing Tony & Susan Alamo Found. v. Secretary of Labor, 471 U.S. 290, 295 (1985)).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods
> for commerce, or that has employees handling, selling, or
> otherwise working on goods or materials that have been moved in
> or produced for commerce by any person; and . . . whose annual
> gross volume of sales made or business done is not less than
> $500,000.

29 U.S.C. § 203(s)(1)(A).

The FLSA defines an "employee" as "any individual employed by an employer."  29

U.S.C. § 203(e)(1); Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098.  An

"employer" is "any person acting directly or indirectly in the interest of an employer in relation

to an employee . . . ."  29 U.S.C. § 203(d).  "Person" is defined as "an individual, partnership,

association, corporation, business trust, legal representative, or any organized group of persons."

29 U.S.C. § 203(a).  To "employ" means "to suffer or permit to work."  29 U.S.C. § 203(g).  The

FLSA covers both "employees who in any workweek [are] engaged in commerce or in the

production of goods for commerce" and those persons who are "employed in an enterprise

engaged in commerce or in the production of goods for commerce. . . ." 29 U.S.C. § 206(a).

According to plaintiff, SD Automotive is a domestic corporation that has a gross annual

volume of sales over $500,000, subjecting it to the requirements of the FLSA.  (Compl. ¶ 27;

Ansari Decl. ¶ 14).  Plaintiff alleges that defendants were directly engaged in interstate

commerce, given that they used repair tools and other goods produced outside the State of New

York on a daily basis.  (Compl. ¶¶ 28, 33).  Plaintiff further alleges that he worked for

defendants as a mechanic from September 2015 to June 19, 2021.  (Ansari Decl. ¶ 18; Pl.'s

Mem. ¶ 1).  Accepting plaintiff's allegations as true for purposes of this default, the Court finds

that plaintiff has sufficiently alleged that defendants qualify as "employer[s]" under the FLSA,

and because the Court finds no basis for exempting the employment relationship at issue from the FLSA provisions, plaintiff qualifies as an "employee" under the FLSA.[8]

Moreover, plaintiff alleges in the Complaint that, during the period of his employment, he regularly worked more than 40 hours per week, was not paid overtime compensation, and was not paid a minimum wage.  (Compl. ¶ 5).  He claims that during the time he worked for defendants, he worked six days per week, from 8:00 a.m. to 5:00 p.m. for five of those days and from 8:00 a.m. to 2:00 p.m. for the remaining day for a total of 51 hours.  (Id. ¶ 36).  Plaintiff alleges he was paid only $420.00 per week from September 2015 through December 2019, and only $450.00 per week from January 2020 until June 19, 2021.  (Id. ¶¶ 38-39).  Plaintiff therefore argues that his pay was insufficient to meet both the minimum wage and overtime requirements of the FLSA.  (Compl. ¶¶ 63, 67).

Thus, because this is a default, the Court accepts plaintiff's uncontested allegations as to liability as true, and respectfully recommends that plaintiff be deemed to have sufficiently set forth the necessary elements to state claims under the FLSA for failure to pay overtime wages.[9]

## B.  Liability under the NYLL

Plaintiff also alleges that defendants violated the NYLL.  Like the FLSA, the NYLL establishes certain minimum wage rates and provides for overtime pay.  See N.Y. Lab. Law

---

[8] See 29 U.S.C. § 213(a) (setting forth the exemptions).

[9] The Court notes that, while plaintiff has adequately alleged a claim for unpaid overtime wages under the FLSA, his allegations show that he was paid approximately $8.24 per hour from September 15, 2015 through December 31, 2019, and approximately $8.82 per hour from January 1, 2020 through June 19, 2021.  (See infra at 11-13).  Both of these rates are greater than the $7.25 minimum wage rate that was in effect under the FLSA for the entire period.  However, as set forth below, minimum wage and overtime rates under the NYLL were significantly higher during both periods.  Given that plaintiff cannot recover damages under both the FLSA and the NYLL, the Court has only considered plaintiff's claims under the NYLL in calculating plaintiff's damages.  See Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 CV 3725, 2010 WL 4159391, at *2 n.2 (S.D.N.Y. Sept. 30, 2010) (holding that plaintiff may only recover once for the same injury).

§ 652; 12 N.Y.C.R.R. § 142-2.2; see, e.g., Noble v. 93 Univ. Place Corp., 303 F. Supp. 2d 365, 376 (S.D.N.Y. 2003).  In addition, an employer is liable under the NYLL if it fails to provide proper wage notices and statements pursuant to the Wage Theft Prevention Act, N.Y. Lab. Law §§ 195(1)(a) and 195(3).

To recover under the NYLL, plaintiff must prove that he is an "employee," and that the defendants are "employer[s]" as defined by the statute.  See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009).  Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law.  See N.Y. Lab. Law § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer").  Similarly, an employee is simply defined as "any individual employed or permitted to work by an employer in any occupation. . . ."  N.Y. Lab. Law § 651(5).

In this case, plaintiff alleges that he was employed by defendants within the meaning of Section 651 of the NYLL.  (Compl. ¶ 71).  Plaintiff alleges that defendants willfully failed to pay minimum wages and overtime as required by the NYLL.  (Id. ¶¶ 72-73, 76-77).  Plaintiff also alleges that he was not provided proper wage statements or notices as required by the NYLL.  (Id. ¶¶ 80, 83).  Accordingly, based on these uncontested allegations, the Court respectfully recommends that plaintiff be deemed to have adequately alleged the elements necessary to state claims under the NYLL.

## C.  Liability of the Individual Defendant: David Klein

Plaintiff brings claims against corporate defendant SD Automotive as well as individual defendant David Klein, who is alleged to own and/or operate SD Automotive.  (Id. ¶ 18). Individuals may be held jointly and severally liable under the NYLL and the FLSA if they meet

8

the statute's definition of an employer.  Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011) (noting that courts in the Second Circuit apply the same analysis for joint liability under the FLSA and NYLL).  This definition extends to "'any person . . . employing any individual in any occupation, industry, trade, business or service' or 'any individual . . . acting as [an] employer.'"  Irizarry v. Catsimatidis, 722 F.3d 99, 117 (2d Cir. 2013) (quoting NYLL §§ 190(3), 651(6)).  Courts apply a four-part test examining whether the individual "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; (4) and maintained employment records."  Lauria v. Heffernan, 607 F. Supp. 2d 403, 409 (E.D.N.Y. 2009) (quoting Herman v. RSR Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (internal quotation marks omitted)).

Plaintiff alleges that defendant Klein had the power to hire and fire employees, including the plaintiff.  (Compl. ¶ 18).  He further alleges that, at all times relevant to this action, defendant Klein was responsible for determining the employees' wages and compensation, establishing the employees' schedules, and maintaining employee records.  (Id. ¶¶ 18, 26).  Taken together and drawing all reasonable inferences in favor of plaintiff, the allegations demonstrate that defendant Klein was an employer within the meaning of the NYLL and the FLSA and is jointly and severally liable with SD Automotive for the judgment.

II.   Damages

Plaintiff seeks backpay, liquidated damages, statutory damages, and attorney's fees and costs for the FLSA and NYLL violations.[10]

---

[10] Although plaintiff originally requested recovery of equipment costs (see Compl. ¶ 86), he does not appear to request it in this motion, nor has he supplied any information to enable the Court to determine damages for this claim.  Accordingly, the Court assumes that plaintiff is no longer pursuing these damages.

### A. Legal Standard

When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the Complaint pertaining to liability.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Deshmukh v. Cook, 630 F. Supp. 956, 959-60 (S.D.N.Y. 1986); 6 Moore's Federal Practice ¶ 55.03[2] at 55-16 (2d ed. 1988).  However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.  "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'"  Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that:  "The Court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages."  Fed. R. Civ. P. 55(b)(2)(B).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing."  Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).  Here, because the plaintiff has provided a reasonably detailed affidavit in support of his request for damages, the Court sees no reason not to proceed.

**B.  Backpay – Minimum Wage and Overtime**

Plaintiff seeks reimbursement for the minimum wages and overtime that he should have received pursuant to both the FLSA and NYLL.  (Compl. ¶¶ 59-78).  Although plaintiff has alleged that he was not paid the proper minimum wage or overtime rate under both the FLSA and the NYLL, plaintiff is "not entitled to recover twice for the same injury."  Charvac v. M & T Project Managers of New York, Inc., No. 12 CV 05637, 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (internal quotation marks and citations omitted), report and recommendation adopted as modified, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015); Llolla v. Karen Gardens Apartment Corp., No. 12 CV 1356, 2014 WL 1310311, at *11 (E.D.N.Y. Mar. 10, 2014), report and recommendation adopted as modified, 2014 WL 1311773 (E.D.N.Y. Mar. 28, 2014); see also Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., 2010 WL 4159391, at *3 (holding that "[a]lthough plaintiffs are entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the Labor law, they may not recover twice").

Plaintiff "may recover under the statute which provides the greatest amount of damages." Charvac v. M & T Project Managers of New York, Inc., 2015 WL 5475531, at *4 (quoting Jiao v. Shi Ya Chen, No. 03 CV 0165, 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007) (citation omitted)).  Since his recovery under the NYLL would be greater because the minimum wage rate in New York was higher than the federal minimum wage rate, the Court has calculated damages owed under the NYLL.  Compare N.Y. Lab. Law § 652 (setting minimum wage rates of $8.75, $9.00, $10.00, $11.00, $12.00, $13.00, and $14.00 during plaintiff's years of work) with 29 U.S.C. § 206(a) (setting minimum wage rate at $7.25 for the entire period).

1)  <u>Minimum Wage</u>

Plaintiff alleges that, rather than receiving an hourly rate, he was paid a "fixed salary" of $420.00 per week from September 2015 to December 2019, and $450.00 per week from January 2020 to June 19, 2021.  (Compl. ¶¶ 38-39).  For purposes of calculating plaintiff's minimum and overtime wage damages, the Court must first determine his "regular rate."  <u>See, e.g.</u>, <u>Santillan v. Henao</u>, 822 F. Supp. 2d 284, 295 (E.D.N.Y. 2011).  Under the non-hospitality specific provisions of the NYLL, plaintiff's regular rate is calculated by "dividing the total hours worked during the week into the employee's total earnings."[11]  N.Y.C.R.R. § 142-2.16.

Plaintiff alleges that he worked 51 hours per week at all times relevant to this action. (Compl. ¶ 36; Pelico Decl. ¶ 10; Ansari Decl. ¶ 20).  Accordingly, the Court calculates his regular rate by dividing his fixed rates of $420.00 and $450.00 by 51 hours per week, which results in a rate of $8.24 per hour from September 15, 2015, through December 31, 2019, and a rate of $8.82 per hour from January 1, 2020 through June 19, 2021.

As of December 31, 2014, the minimum wage rate for employees in Nassau County was $8.75 per hour; as of December 31, 2015, the minimum wage rate was $9.00 per hour.  The rate increased to $10.00 an hour as of December 31, 2016, and then increased to $11.00 per hour as of December 31, 2017.  As of December 31, 2018, the minimum wage rate was $12.00 per hour,

---

[11] Plaintiff contends that his regular rate is calculated by dividing his weekly fixed rates by 40 hours per week, rather than the total hours worked per week.  (<u>See</u> Dam. Calc.).  Accordingly, he alleges that his regular rate was $10.50 per hour from September 15, 2015 through December 2019, and $11.25 per hour from January 2020 through June 19, 2021.  (<u>Id.</u>)  However, the Court does not find support in the NYLL for this method of calculation.  <u>See</u> N.Y.C.R.R. § 142-2.16 (defining "regular rate" as total earnings per week divided by total hours worked per week); <u>Ayala v. Your Favorite Auto Repair & Diagnostic Center, Inc.</u>, No. 14 CV 5269, 2016 WL 5092588, at *23 (using the method outlined in N.Y.C.R.R. § 142-2.16 to calculate regular rate in wage and hour action against automotive repair shop).  While the NYLL Hospitality Industry Wage Order allows for plaintiff's method of calculation, it applies only to restaurants and hotels, and SD Automotive does not fit the statute's definition of these terms.  <u>See</u> N.Y.C.R.R. § 146-3.1.

increasing to $13.00 an hour as of December 31, 2019, $14.00 per hour as of December 31, 2020.   N.Y. Lab. Law § 652; (see Pl.'s Mem. at 4).   Based on these statutorily required rates, the Court agrees with plaintiff's contention that between September 15, 2015, and June 19, 2021, he was not paid the minimum wage pursuant to the NYLL, not considering  any overtime pay that he was owed for the additional 11 hours per week over 40 that he allegedly worked.  (See Compl. ¶ 72).

To determine plaintiff's unpaid minimum wages for the first 40 hours he worked each week, the Court subtracts his regular rate from the applicable minimum wage rate, and then multiplies this figure by 40 hours per week. To determine the total amount owed to plaintiff as a result of defendants' failure to pay minimum wages, the Court multiplies the minimum wages owed per week by the number of weeks worked per pay period.

From September 15, 2015, through December 2015, plaintiff's regular hourly rate was $0.51 below the minimum hourly rate; consequently, plaintiff was underpaid by $306.00 for this period, setting aside any overtime pay.  From January 2016 through December 2016, plaintiff was underpaid by $0.76 per hour, representing a total underpayment of $1,580.80.  From January 2017 through December 2017, plaintiff was underpaid by $1.76 per hour, representing a total underpayment of $3,660.80.  From January 2018 through December 2018, plaintiff was underpaid by $2.76 per hour, representing a total underpayment of $5,740.80.  From January 2019 through December 2019, plaintiff was underpaid by $3.76 per hour, representing a total underpayment of $7,820.80.  From January 2020 through December 2020, plaintiff was underpaid by $4.18 per hour, representing a total underpayment of $8,694.40.  From January 2021 through June 19, 2021, plaintiff was underpaid by $5.18 per hour, representing a total underpayment of $4,972.80.  Upon summing the yearly totals, the Court calculates that plaintiff

is owed $32,776.40 in unpaid minimum wages for the period September 15, 2015, through June 19, 2021.[12]

    2)  Overtime Pay

As for his claim for overtime pay, plaintiff was entitled to receive time and a half for hours worked in excess of 40 each week.  See N.Y. Lab. Law § 652; 12 N.Y.C.R.R. § 142-2.2. Accordingly, for hours worked over 40 each week, plaintiff is owed the difference between the proper overtime rate and his regular rate.  See Espinoza v. Indus. Glass & Mirror Inc., No. 16 CV 0064 (ARR) (RER), 2016 WL 7650592, at *5 (E.D.N.Y. Nov. 30, 2016), report and recommendation adopted, 2017 WL 65828 (E.D.N.Y. Jan. 5, 2017) (calculating overtime pay owed by subtracting the amount plaintiff was paid from the amount he was entitled to receive for overtime).  To calculate plaintiff's unpaid weekly overtime wages, the Court calculated the difference between what plaintiff was paid and the overtime wage rate he should have received during each period.  The Court then multiplied plaintiff's overtime wage rate by the number of hours exceeding 40 in a workweek and then the number of weeks in the pay period.  See, e.g., Cardoza v. Mango King Farmers Market Corp., No. 14 CV 3314, 2015 WL 5561033, at *9 (E.D.N.Y. Sept. 1, 2015).

---

[12] The Court's calculations are as follows:
September 15, 2015 – December 2015: $8.75 – $8.24 = $0.51 per hour x 40 hours x 15 weeks = $306.00.
January 2016 – December 2016: $9.00 – $8.24 = $0.76 per hour x 40 hours x 52 weeks = $1,580.80.
January 2017 – December 2017: $10.00 – $8.24 = $1.76 per hour x 40 hours x 52 weeks = $3,660.80.
January 2018 – December 2018: $11.00 – $8.24 = $2.76 per hour x 40 hours x 52 weeks = $5,740.80.
January 2019 – December 2019: $12.00 – $8.24 = $3.76 per hour x 40 hours x 52 weeks = $7,820.80.
January 2020 – December 2020: $13.00 – $8.82 = $4.18 per hour x 40 hours x 52 weeks = $8,694.40.
January 2021 – June 19, 2021: $14.00 – $8.82 = $5.18 per hour x 40 hours x 24 weeks = $4,972.80.
Adding the total amount for each period results in $32,776.40.

Plaintiff's overtime wage rates are calculated based his regular rate of pay or the applicable minimum wage rate, whichever is greater.[13]  Given that his regular rate was below the minimum wage rate from September 15, 2015, through June 19, 2021, plaintiff's overtime rate is calculated using the applicable minimum wage rates under the NYLL.[14]  Thus, the difference between plaintiff's proper overtime rate and the rate he actually received was $4.885 per hour from September 15, 2015, through December 2015, $5.26 per hour from January 2016 through December 2016, $6.76 per hour from January 2017 through December 2017, $8.26 per hour from January 2018 through December 2018, $9.76 per hour from January 2019 through December 2019, $10.68 per hour from January 2020 through December 2020, and $12.18 per hour from January 2021 through June 19, 2021.

Plaintiff alleges that he worked 51 hours per week, which amounts to 11 hours of overtime per week.  (Compl. ¶ 36; Pelico Decl. ¶ 10; Ansari Decl. ¶ 20).  Based on this information, the Court calculates that plaintiff is owed a total of $27,313.385 in unpaid overtime wages for the period September 15, 2015, through June 19, 2021.[15]

---

[13] New York law requires that employees be compensated at "one and one-half times the employee's regular rate of pay" and provides that the regular rate should be calculated "in the manner and methods provided in" the FLSA. 12 N.Y. C.C.R.R. § 142-2.2.  The FLSA provides that overtime pay should be calculated based on the employee's regular rate of pay or the minimum wage, whichever is greater.  See 29 U.S.C. § 207; 29 C.F.R. § 778.107.

[14] As noted above, the minimum wage rates for employees in Nassau County during plaintiff's employment with defendants were $8.75 per hour as of December 31, 2014; $9.00 per hour as of December 31, 2015; $10.00 per hour as of December 31, 2016; $11.00 per hour as of December 31, 2017; the minimum wage rate was $12.00 per hour as of December 31, 2018; $13.00 per hour as of December 31, 2019; and $14.00 per hour as of December 31, 2020.  N.Y. Lab. Law § 652.

[15] The Court's calculations are as follows:
September 15, 2015 – December 2015: $8.75 x 1.5 = $13.125 – $8.24 = $4.885 per hour x 11 hours x 15 weeks = $806.025.
January 2016 – December 2016: $9.00 x 1.5 = $13.50 – $8.24 = $5.26 per hour x 11 hours x 52 weeks = $3,008.72.
January 2017 – December 2017: $10.00 x 1.5 = $15.00 – $8.24 = $6.76 per hour x 11 hours x 52 weeks = $3,866.72.
January 2018 – December 2018: $11.00 x 1.5 = $16.50 – $8.24 = $8.26 per hour x 11 hours x 52 weeks = $4,724.72.

15

According to the Court's calculations, plaintiff is owed $60,089.79 in unpaid minimum and overtime wages.[16]  Plaintiff, however, alleges that he is owed $67,488.75 in backpay, representing $10,440.00 in unpaid minimum wages and $57,048.75 in unpaid overtime wages. (See Mem. at 5; Dam. Calc.).  As noted previously, having reviewed plaintiff's damages calculations, it appears that he calculates his regular rate by dividing his weekly fixed salary by 40 hours, which is the method of calculation permitted for hospitality employees pursuant to the NYLL Hospitality Industry Wage Order.[17]  (See Dam. Calc.).  However, the NYLL Hospitality Industry Wage Order, which applies only to restaurants and hotels, does not apply to SD Automotive.  See N.Y.C.R.R. § 146-3.1.  Therefore, plaintiff's regular rate must be calculated by dividing his weekly fixed salary by the number of hours worked per week, as required by N.Y.C.R.R. § 142-2.16.  (See Dam. Calc.).  Consequently, plaintiff's alleged regular and overtime rates are higher than those the Court uses in its calculations.  Given this error in plaintiff's calculations, the Court respectfully recommends awarding plaintiff a total of $60,089.79 in unpaid minimum and overtime wages.

---

January 2019 – December 2019: $12.00 x 1.5 = $18.00 – $8.24 = $9.76 per hour x 11 hours x 52 weeks = $5,582.72.

January 2020 – December 2020: $13.00 x 1.5 = $19.50 – $8.82 = $10.68 per hour x 11 hours x 52 weeks = $6,108.96.

January 2021 – June 19, 2021: $14.00 x 1.5 = $21.00 – $8.82 = $12.18 per hour x 11 hours x 24 weeks = $3,215.52.

Adding the total amount for each period results in $27,313.385.

[16] According to the Court's calculations as described above, plaintiff is owed $32,776.40 in unpaid minimum wages and $27,313.385 in overtime wages for the period of September 15, 2015 through June 19, 2021, resulting in a total of $60,089.785.  The Court has rounded this total amount up to $60,089.79.

[17] The NYLL Hospitality Industry Wage Order provides that "regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week."  See N.Y.C.R.R. § 146-3.5(b).

### C.  Liquidated Damages

In addition to compensatory damages, plaintiff seeks liquidated damages pursuant to the NYLL.  (See Mem. at 7-8); N.Y. Lab. Law § 663(1).  Plaintiff claims he is entitled to liquidated damages under the NYLL for the entire period, amounting to a total of $60,089.79 in liquidated damages on those unpaid wages and overtime.[18]  (See Dam. Calc. at 1; Ansari Decl. ¶ 54).

The NYLL provides for liquidated damages for wage-claim violations, calculated in an amount equal to 100% of the wage underpayments.  N.Y. Lab. Law §§ 198(1-a), 663(1).  Prior to November 24, 2009, an employee could recover liquidated damages under the NYLL if the underpayment was found to be willful.  Id. § 663(1).  However, an amendment to the NYLL, effective November 24, 2009, "incorporated the federal standard" and shifted the burden of proving good faith to the employer.  Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016) (quoting Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)).  Under the NYLL, therefore, the employer bears the burden of proving good faith and reasonableness.  The employer's burden of proving good faith "is a difficult one, with double damages being the norm and single damages the exception."  Gortat v. Capala Bros., 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)).  Defendants have defaulted and therefore have not met their statutory burden of demonstrating that they acted in good faith in failing to pay overtime to plaintiff; thus, the Court finds that plaintiff is entitled to an award of liquidated damages under the NYLL.  Accordingly, the Court recommends awarding plaintiff an

---

[18] Although plaintiff requests a higher amount of $67,488.75 in liquidated damages, see Ansari Decl. ¶ 54, the Court attributes this to his erroneous backpay calculation.  Accordingly, the Court used its own calculation of unpaid minimum and overtime wages to determine liquidated damages.

additional $60,089.79 in liquidated damages, which is equal to the Court's calculation of the amount due in unpaid minimum and overtime wages.

### D.  Statutory Damages for Wage Notice Violations

Plaintiff also alleges that defendants failed to maintain accurate recordkeeping of his hours worked, failed to provide him with a wage notice as required by NYLL § 195(1), and failed to provide him with wage statements containing the information required by NYLL § 195(3).  (Compl. ¶¶ 48, 80, 83).

Section 195(1) requires that an employer provide a notice to the employee, at the time of hiring, that sets forth the rate of pay, allowances, and other specified information.  N.Y. Lab. Law § 195(1).  Employers are also required to provide such a notice whenever any of the information required by the notice, such as the rate of pay, changes.  Id.  Section 195(3) requires that every employer provide to his or her employees "a statement with every payment of wages," listing various information, including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.  N.Y. Lab. Law § 195(3).

The statute provides that an employee can recover $250.00 for each workday that the employer was in violation of Section 195(3), up to a statutory maximum of $5,000.00.  See N.Y. Lab. Law § 198(1-d).  Similarly, an employee can recover $50.00 for each workday that the employer was in violation of Section 195(1), up to a statutory maximum of $5,000.00.  See id. § 198(1-b).  Here, plaintiff alleges that he did not receive the required wage notice at the time of hire or at any point in time, nor was he provided with wage statements when he received his wage payments.  (Compl. ¶¶ 80, 83).  Since plaintiff began working in September 2015 and worked for more than the minimum number of days required, he is entitled to receive an

additional $5,000.00 for each of these statutory violations, or $10,000.00 in total, as a penalty for defendants' violation of these sections.

### E. Post-Judgment Interest

Plaintiff also seeks an award of post-judgment interest. (Compl. at 16). Interest under 28 U.S.C. § 1961(a) is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a). The Second Circuit has held that post-judgment interest is mandatory on all awards in civil cases as of the date judgment is entered. Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996). Accordingly, it is respectfully recommended that plaintiff be awarded post-judgment interest at the statutory rate on the totality of plaintiff's award, including plaintiff's compensatory, liquidated, and statutory damages, as calculated by the Clerk of Court.

### III. Attorney's Fees

Plaintiff also seeks an award of $2,175.00 in attorney's fees and $477.00 in costs incurred in connection with this action, pursuant to the FLSA, 29 U.S.C. § 216(b), and NYLL §§ 198(4), 663(1). (Ansari Decl. ¶¶ 56-57, Ex. 7).

### A. Prevailing Party

The FLSA is a fee shifting statute and the Court "must" award a reasonable attorney's fee to a prevailing party in an FLSA action. Khalil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 473 (S.D.N.Y. 2009) (quoting 29 U.S.C. § 216(b) (providing that the court in an FLSA action "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action") (emphasis supplied)); see, e.g., Torres v. Gristede's Operating Corp., No. 04 CV 3316, 2012 WL 3878144,

at *1 (S.D.N.Y. Aug. 6, 2012), <u>aff'd</u>, 519 Fed. App'x 1, 3 (2d Cir. 2013).  Similarly, the NYLL

provides for an award of reasonable attorney's fees when the employee prevails on a wage claim.

N.Y. Lab. Law § 663(1).  Section 663 provides that successful employees are entitled to:

> recover in a civil action the amount of any such underpayments,
> together with costs all reasonable attorney's fees, prejudgment
> interest as required under the civil practice law and rules . . . .

<u>Id.</u>

Plaintiff is a prevailing party under the FLSA and NYLL "'if [he] succeeds on any

significant issue in litigation which achieves some of the benefit [he] sought in bringing suit.'"

<u>Khalil v. Original Old Homestead Rest., Inc.</u>, 657 F. Supp. 2d at 474 (quoting <u>Hensley v.

Eckerhart</u>, 461 U.S. 424, 433 (1983)); <u>see</u> <u>Koster v. Perales</u>, 903 F.2d 131, 134 (2d Cir. 1990)

(holding that "[a] plaintiff may be considered a prevailing party even though the relief ultimately

obtained is not identical to the relief demanded in the complaint").

Here, because defendants have defaulted, plaintiff is a prevailing party and therefore

should receive an award of reasonable attorney's fees and costs.  <u>See</u> <u>Abafita v. Aldukhan</u>, No.

16 CV 06072 (RMB) (SDA), 2019 WL 6735148, at *10 (S.D.N.Y. Apr. 4, 2019), <u>report and

recommendation adopted</u>, 2019 WL 4409472 (S.D.N.Y. Sept. 16, 2019) (holding that

"Defendants have defaulted in this action, and so Plaintiff is the prevailing party.  Thus, she is

entitled to recover attorneys' fees under" several statutes, including the FLSA and NYLL.)

**B.  Calculation of Reasonable Attorney's Fees**

1)  <u>Legal Standard</u>

"The district court retains discretion to determine . . . what constitutes a reasonable fee."

<u>Millea v. Metro-North R.R. Co.</u>, 658 F.3d 154, 166 (2d Cir. 2011) (quoting <u>LeBlanc-Sternberg v.

Fletcher</u>, 143 F.3d 748, 758 (2d Cir. 1998)).  "The traditional starting point for determining a

reasonable attorney's fee award is the 'lodestar' amount, which results in a presumptively reasonable fee." Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350, at *5 (S.D.N.Y. Mar. 1, 2012) (citing Perdue v. Kenny A., 559 U.S. 542, 551-52 (2010)), report and recommendation adopted, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008); Millea v.Metro-North R.R. Co., 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the lodestar "as a starting point").

To determine the lodestar amount, a court must determine "the number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. March 19, 2013), report and recommendation adopted, 2013 WL 1622713 (April 15, 2013); see also Adusumelli v. Steiner, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. March 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number of hours reasonably expended by a reasonable hourly rate") (citing Millea v. Metro-North R.R., Co., 658 F.3d at 166); Dunn v. Advanced Credit Recovery, Inc., 2012 WL 676350, at *5. Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'" Millea v. Metro-North R.R. Co., 658 F.3d at 167 (quoting Perdue v. Kenny A., 130 S. Ct. at 1673). Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" Id. (quoting Perdue v. Kenny A., 130 S. Ct. at 1673); see also Adusumelli v. Steiner, 2013 WL 1285260, at *2. In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation

21

itself because doing so effectively double-counts those factors." Id.  As the court explained in

Dunn v. Advanced Credit Recovery, Inc., a court should "first use[] the lodestar method to

determine the amount of attorney's fees and then, if necessary, adjust[] the resulting figure using

the [Johnson v. Georgia Highway Express, Inc.] factors to reflect consideration of any special

circumstances."[19]  2012 WL 676350, at *5, n.6.

The burden is on the party moving for attorney's fees to justify the hourly rates sought.

See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).  In addition to the parties' evidentiary

submissions, the Court may consider its own experience and familiarity with the case and with

rates generally charged.  See Cruz v. Local Union No. 3, 34 F.3d 1148, 1160

(2d Cir. 1994) (noting that "[a] district court's 'choice of rates [is] well within [its] discretion'"

(quoting Cabrera v. Jakabovitz, 24 F.3d 372, 393 (2d Cir. 1994)), cert. denied, 513 U.S. 876

(1994)).  To "inform and assist the court in the exercise of its discretion, the burden is on the fee

applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the

requested rates are in line with those prevailing in the community for similar services by lawyers

of reasonably comparable skill, experience, and reputation."  Blum v. Stenson, 465 U.S. 886, 895

n.11 (1984).

Indeed, the Second Circuit has held that in calculating the presumptively reasonable fee,

---

[19] The Johnson factors are as follows:

(1) the time and labor required; (2) the novelty and difficulty of the questions;
(3) the skill required to perform the legal service properly; (4) the preclusion of
employment by the attorney due to acceptance of the case; (5) the customary fee;
(6) whether the fee is fixed or contingent; (7) the time limitations imposed by the
client or the circumstances; (8) the amount involved and the results obtained; (9)
the experience, reputation, and ability of the attorneys; (10) the "undesirability"
of the case; (11) the nature and length of the professional relationship with the
client; and (12) awards in similar cases.

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

"courts 'should generally use the hourly rates employed in the district in which the reviewing court sits.'" Simmons v. New York City Transit Auth., 575 F.3d at 174 (holding that when awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located) (citations omitted).

2)   Analysis

In this case, plaintiff was represented by the firm of CSM Legal, P.C. ("CSM"), which is located at 60 East 42nd Street, Suite 4510, New York, New York 10165. (Ansari Decl. ¶ 59; Billing Recs.). In accordance with New York State Association for Retarded Children, Inc. v. Carey, the Firm submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the rate at which the services were charged, along with the name of the attorney and a description of services performed. 711 F.2d 1136, 1148 (2d Cir. 1983). (See Billing Recs.). Plaintiff seeks attorney's fees in the amount of $2,175.00, representing services performed by Ramsha Ansari, a 2020 law school graduate, and an unnamed paralegal. (Ansari Decl. ¶ 59). According to Ms. Ansari's Declaration, she litigated wage and hour cases at a different firm prior to joining CSM in January 2022 as a Litigation Associate. (Id.) Plaintiff seeks an award of fees calculated at a rate of $300.00 per hour for Ms. Ansari and $125.00 per hour for the paralegal.

Based on the Court's knowledge of the rates generally charged for this type of work in connection with an FLSA default, the Court does not find the rate requested for Ms. Ansari reasonable. An hourly rate of $300.00 is considerably higher than what is typically charged for similarly experienced associates in this district. See Li v. Hly Chinese Cuisine Inc., No. 18 CV 5077, 2022 WL 1597302, at *7 (E.D.N.Y. Mar. 31, 2022) (noting "[r]ecent decisions in the Eastern District of New York have determined that reasonable hourly rates in FLSA cases are

23

approximately . . . $200-$325 for senior associates [and] $100-$200 for junior associates")
(quoting Mendez v. Casa Blanca Flowers, Ltd., No. 12 CV 5786, 2014 WL 4258943, at *6
(E.D.N.Y. July 8, 2014), report and recommendation adopted, 2014 WL 4258988 (E.D.N.Y.
Aug. 27, 2014)); see also Antoine v. Brooklyn Maids 26, Inc., 489 F.Supp. 3d 68, 103-04
(E.D.N.Y. Sept. 26, 2020) (finding a $250.00 hourly rate appropriate for an associate with eight
years of experience); Barbera v. VLF11 Management Corp., No. 08 CV 2615, 2012 WL
1576109, at *7 (E.D.N.Y. Apr. 3, 2012) (finding an hourly rate of $280.00 "high" for an
associate with three years of experience in the relevant practice area).  Given that the legal issues
presented in this default are relatively straightforward, the Court finds insufficient justification to
award Ms. Ansari at a rate outside the standard range found to be reasonable for a junior
associate with less than three years of experience.  See Alveranga v. Winston, No. 04 CV 4356,
2007 WL 595069, at *7 (E.D.N.Y. Feb. 22, 2007) (explaining that "[r]ates awarded . . . in cases
not involving complex issues tend, on average, to be lower"); see also Baizan Guerrero v. 79th
Street Gourmet & Deli Inc., No. 18 CV 04761, 2019 WL 4889591, at *12 (E.D.N.Y. Sept. 10,
2019) (recommending reducing a partner's hourly rate from $450.00 to $350.00 in FLSA default
of "relative simplicity").

　　　　Therefore, the Court respectfully recommends reducing Ms. Ansari's rate to $200.00 per
hour.  This rate is comparable to prior awards in this district for associates with Ms. Ansari's
level of experience in the relevant practice area.  See Jian Hui Lin v. Joe Japanese Buffet Rest.
Inc., No. 17 CV 3435, 2022 WL 2718584, at *6 (E.D.N.Y. June 7, 2022) (finding requested
hourly rate of $200 in an FLSA case reasonable for junior associates), report and
recommendation adopted, 2022 WL 2716487 (E.D.N.Y. July 13, 2022);  Kotuwage v. NSS
Petroleum Inc., No. 15 CV 4374, 2019 WL 1370692, at *2 (E.D.N.Y. Mar. 6, 2019) (finding an

hourly rate of $200.00 reasonable for a junior associate with no more than two years of post-law school experience); see also Solnin v. Sun Life and Health Insurance Company, No. 08 CV 2759, 2018 WL 4853046, at *3 (E.D.N.Y. Sept. 28, 2018) (finding an hourly rate of $200.00 reasonable for junior associates with two years of experience in the relevant practice area).

As to the hourly rates charged for the unnamed paralegal, the Court finds insufficient justification in the record to award the full amount requested.  Courts in this district have typically awarded hourly rates between $70.00 and $100.00 for work performed by paralegals. Feltzin v. Ciampa Whitepoint LLC, No. 15 CV 2279, 2017 WL 570761, at *2 (E.D.N.Y. Feb. 13, 2017); see, e.g., Zepeda v. Hillside Tire Shop, Inc., No. 15 CV 530, 2016 WL 5376246, at *4 (E.D.N.Y. June 30, 2016) (reducing a paralegal's hourly rate from $95.00 to $75.00, the average rate awarded in the district); Campa Flores v. New Sunstone Mexican Food, Inc., No. 17 CV 2941, 2018 WL 6840081, at *6 (E.D.N.Y. Sept. 13, 2018).

Here, plaintiff fails to identify or provide background information on the paralegal, making it impossible for the Court to justify an award outside the typical range.  Therefore, the Court respectfully recommends reducing the paralegal's rate to $90.00 per hour, a rate well within the $70-$100 range of rates for litigation support staff traditionally awarded in this district.  See Mack v. No Parking Today, Inc., No. 16 CV 3986, 2019 WL 490137, at * 14 (E.D.N.Y. Jan. 9, 2019) (collecting cases approving hourly rate of $90 for a paralegal's work), report and recommendation adopted as modified, 2019 WL 337096 (E.D.N.Y. Jan. 28, 2019); see also Santiago v. Coco Nail HB, Inc., No. 10 CV 3373, 2012 WL 1117961, at *4 (E.D.N.Y. Mar. 16, 2012) (recommending reduction in hourly rate "[i]n consideration of the lack of information provided about [counsel's] background and experience).

Turning to the number of hours billed, the Firm seeks compensation for 7.0 hours of work by Ms. Ansari and 0.6 hours of work by the paralegal, for a total of 7.6 hours of work. (See Billing Recs.).  In reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours."  Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) (citing Hensley v. Eckerhart, 461 U.S. at 433-35, 440); see also Rotella v. Board of Educ., No. 01 CV 434, 2002 WL 59106, at *3-4 (E.D.N.Y. Jan. 17, 2002) (applying percentage reduction to fees of several attorneys for excessive and redundant billing); Quinn v. Nassau City Police Dep't., 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and redundant time); Perdue v. City Univ. of N.Y., 13 F. Supp. 2d 326, 346 (E.D.N.Y. 1998) (imposing a 20% reduction for redundancy); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work" and deducting 40% of plaintiffs' lawyer's hours).

Similarly, courts routinely apply across-the-board reductions for vague entries, see, e.g., In re Olson, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989) (reducing fees based on lack of specificity in description of work performed); DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing fee request by 40% for, inter alia, insufficient descriptions of work performed), rev'd & remanded on other grounds, 38 F.3d 651 (2d Cir. 1994); Cabrera v. Fischler, 814 F. Supp. 269, 290 (E.D.N.Y. 1993) (reducing fees by 30% for vague entries with insufficient descriptions of work performed), rev'd in part & remanded on other grounds, 24 F.3d 372 (2d Cir.), cert. denied, 513 U.S. 876 (1994); Nu-Life Constr. Corp. v. Board of Educ., 795 F. Supp. 602, 607-08 (E.D.N.Y. 1992) (reducing fees by 30% due in part to lack of specificity in descriptions of work performed); Meriwether v. Coughlin, 727 F. Supp. 823, 827

26

(S.D.N.Y. 1989) (finding an overall reduction of 15% warranted based on vague descriptions of work performed).

Having reviewed the billing records submitted by counsel and being familiar with the proceedings to date, the Court finds that the number of hours charged in this matter is reasonable, given the amount of work performed.  Thus, plaintiff is owed a total sum of $1,454.00, which represents:  $1,400.00, representing 7.0 hours of work at $200.00 per hour by Ms. Ansari, and $54.00, representing 0.6 hours of work at $90.00 per hour for work performed by the paralegal. Accordingly, based on the hourly rate set forth above, and the number of hours billed on this matter, the Court respectfully recommends that plaintiff be awarded $1,454.00 in attorney's fees.

### C.  Reasonable Costs

Plaintiff also requests $477.00 total in costs, consisting of $402.00 for the filing fee and service of process fees of $75.00.  (Billing Recs.).

Based on a review of the record, the Court finds these costs to be reasonable, and respectfully recommends that plaintiff be awarded $477.00 in costs.  See Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 290-91 (E.D.N.Y. 2010) (awarding $818.53 in costs for filing fees, service of process, legal research, and postage; see also Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 374 (S.D.N.Y. 2005) (citing Kuzma v. Internal Revenue Serv., 821 F.2d 930, 933-34 (2d Cir. 1987) (explaining that "[i]dentifiable out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable . . . and are often distinguished from nonrecoverable routine office overhead, which must be absorbed within the attorney's hourly rate").  In sum, the Court recommends that plaintiff be awarded $1,454.00 in attorney's fees, plus an additional $477.00 in costs, totaling $1,931.00.

**CONCLUSION**

Accordingly, the Court respectfully recommends that plaintiff's motion for default judgment be granted.  The Court further respectfully recommends awarding plaintiff **$132,110.58** in damages, which includes $60,089.79 in compensatory damages, $60,089.79 in liquidated damages, $10,000.00 for statutory violations, and $1,931.00 in attorney's fees and costs.  Additionally, the Court recommends that plaintiff be awarded post-judgment interest at the statutory rate on the totality of plaintiff's award, including plaintiff's compensatory, liquidated, and statutory damages, as calculated by the Clerk of Court.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: August 25, 2022
    Brooklyn, New York

                    /s/ Cheryl L. Pollak
                    _____
                    CHERYL L. POLLAK
                    Chief United States Magistrate Judge
                    Eastern District of New York